UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOHN AND JANE DOE 1, et al.,

    Plaintiffs,

  v.

SPRINGBORO COMMUNITY
CITY SCHOOL DISTRICT, et al.,

    Defendants.

Case No. 1:19-cv-785

JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

The allegations in this case are disturbing, to say the least. Plaintiffs, parents of female first-grade students who attended Clearcreek Elementary School during the 2018–2019 school year, allege that one of the defendants, physical education teacher John Austin Hopkins, engaged in repeated patterns of sexual contact with his students (including their children) during his physical education classes. (Third Am. Compl., Doc. 35, #199–201).[1] The parents sued Hopkins and school administration officials, raising claims under federal and state law. Hopkins moves to dismiss, arguing that the parents' allegations are conclusory and insufficient to plausibly allege their claims. (*See generally* Doc. 57). For the reasons discussed below, the Court **DENIES** Hopkins's motion.

---

[1] As the Third Amended Complaint is the active complaint in this action, the Opinion refers to it simply as the Complaint.

## BACKGROUND

The parents allege[2] that Hopkins began working for Clearcreek Elementary during the 2017-2018 school year as a long-term substitute physical education teacher. (Doc. 35, #200). He was then hired permanently for the position during the 2018-2019 school year, allegedly assisted during the hiring process by his "relationships with teachers and former administration of Springboro." (*Id.*). During that second school year, with the knowledge of school administration, Hopkins kept the door to the gymnasium locked during his classes, preventing any other adult from spontaneously walking in. (*Id.*). He even installed a doorbell on the exterior of the gymnasium door so that he would be alerted any time any school personnel wanted to access the gymnasium. (*Id.*).

It was presumably[3] during these classes that Hopkins, according to the parents, engaged in "sexual contact," as that term is defined in Ohio Revised Code § 2907.01(B) with several female students. (*Id.* at #201). That statute defines sexual contact as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." Ohio Rev. Code

---

[2] As this matter comes before the Court on a motion to dismiss, the Court must accept the well-pleaded allegations in the Complaint as true. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). But in reporting the background here based on those allegations, the Court reminds the reader that they are just that—allegations.

[3] The Complaint does not explicitly allege that Hopkins engaged in the sexual contact during his physical education classes. But the parents allege that security camera footage exists depicting the contact, leading the Court to infer that the contact occurred during his classes. (Doc. 35, #202).

§ 2907.01(B). And this allegation is not bald conjecture. The parents state that on June 17, 2019, Hopkins was criminally indicted on 36 counts of gross sexual imposition for the same conduct. (Doc. 35, #201). That case eventually went to trial, where Hopkins was found guilty on 34 counts and was sentenced to an aggregate prison term of 96 months. *Ohio v. Hopkins*, No. 19CR35620 (Warren Cnty. Ct. Common Pleas June 10, 2020).[4] In other words, the jury concluded that the state had proven, beyond a reasonable doubt, that the activity alleged in those 34 counts occurred, and that conduct was sufficiently serious that the judge concluded that a term of 96 months incarceration was appropriate.

After Hopkins's conduct came to light, the parents sued the Springboro Community City School District Board of Education;[5] the Clearcreek Elementary superintendent and the Clearcreek Elementary school principal, (School Administration Defendants); and Hopkins. (Doc. 35, #199–200). They initially brought five substantive claims[6]: (1) a claim under Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 (against all defendants in their official capacities); (2) a Fourteenth Amendment substantive due process claim, via 42 U.S.C. § 1983 (against all defendants); (3) a claim under Ohio's mandatory reporting statute,

---

[4] The Complaint only references the indictment, but the Court takes judicial notice of Hopkins's criminal conviction and sentence. The documents for that criminal case are not accessible online, so the Court procured copies directly from the clerk of the Warren County Court of Common Pleas.

[5] The parents initially sued the school district itself, (Doc. 1, #3), but amended their complaint to substitute the Board of Education in its place.

[6] The sixth claim, which seeks injunctive relief against the school district, is not a standalone claim but a form of relief. (Doc. 35, #207–08).

Ohio Rev. Code § 2151.421 (against the principal only); (4) civil claims for assault and battery[7] under Ohio law (against Hopkins); and (5) an intentional infliction of emotional distress claim under Ohio law (also against Hopkins). (*Id.* at #202–07).

Now, after settling their claims with the school administration defendants, (*see* Stipulated Dismissal with Prejudice, Doc. 61), the parents maintain only their individual claims against Hopkins. (*See* Doc. 59, #400 (refraining from seeking Title IX relief against Hopkins individually)). Hopkins has moved to dismiss the claims against him under Federal Rule of Civil Procedure 12(b)(6), arguing that the parents fail to allege specific non-conclusory facts from which this Court could reasonably infer that he is liable. (*See generally* Doc. 57). The parents responded, (Doc. 59), Hopkins replied, (Doc. 60), and the motion is now ripe for review.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege "sufficient factual matter … to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (cleaned up). While a "plausible" claim for relief does not require a showing of probable liability, it requires more than "a sheer possibility that a defendant has acted unlawfully." *Id.*. The complaint must allege sufficient facts to allow the Court to "draw the reasonable inference that the defendant is liable." *Id.* At the motion-to-dismiss stage, the Court accepts the facts of the Complaint as true. *Id.* But that does not mean the Court must take everything a plaintiff alleges at face value, no matter how unsupported. The

---

[7] Which in actuality are two different claims but are listed together in the Complaint.

Court may disregard "naked assertions" of fact or "formulaic recitation[s] of the elements of a cause of action." *Id.* (cleaned up).

## LAW AND ANALYSIS

Hopkins maintains that the parents' complaint is full of vague and thread-bare allegations and thus fails to state a claim for relief. (Doc. 57, #372). While the Court agrees the Complaint is short on details, the Court nonetheless finds the parents' claims plausible enough to proceed to discovery.

Before evaluating the plausibility of the parents' claims, the Court notes that some are not asserted against Hopkins. The parents' response clarifies that "[b]ecause Hopkins has no capacity to act on behalf of Springboro," they do not assert a Title IX claim against him individually. (Doc. 59, #400). And as to the mandatory-reporting claim, that claim was only ever asserted against the Clearcreek Elementary principal. For the Fourteenth Amendment claim, the parents' response also makes clear that their suit against Hopkins is only against him individually at this point. (*Id.* at #400–01). So the current claims against Hopkins include (1) an individual-capacity Fourteenth Amendment substantive due process claim, (2) civil assault and battery claims, and (3) an intentional infliction of emotional distress claim.

### A. Fourteenth Amendment Claim

To allege a plausible claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) she was "deprived of a right secured by the Constitution", and (2) "such deprivation occurred under color of state law." *Doe v. Claiborne Cnty., ex rel.Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 511 (6th Cir. 1996). As a public-school teacher,

5

Hopkins does not argue that he was not acting under color of state law. Rather, he disputes that the parents have plausibly alleged that he deprived the children of a right secured by the Constitution.

"It is undisputed that the Due Process Clause of the Fourteenth Amendment protects the right of a child to be free from sexual abuse inflicted by a public school employee or teacher." *Doe v. Warren Consol. Schs.*, 93 F. App'x 812, 818 (6th Cir. 2004). Furthermore, "sexual abuse under color of law is so contrary to fundamental notions of liberty and so lacking of any redeeming social value, that no rational individual could believe that sexual abuse by a state actor is constitutionally permissible under the Due Process Clause." *Doe ex rel. Doe v. City of Roseville*, 296 F.3d 431, 438 (6th Cir. 2002) (cleaned up). When evaluating whether actions constitute "sexual abuse" in violation of the Due Process Clause, the Court asks whether the abuse of power effectuated by the official is so offensive and indefensible as to "shock[] the conscience" of the Court. *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 725 (6th Cir. 1996).

In *Lillard*, the court applied the "shocks the conscience" standard when evaluating whether a teacher who rubbed a student's stomach and made a suggestive comment violated the Due Process Clause. *Id.* at 726. The court held that while the teacher's conduct was "wholly inappropriate," it did not shock the conscience. *Id.* The court specifically noted that the teacher's conduct amounted to a "single, isolated incident." *Id.*

6

Contrast *Lillard* with *Doe v. Claiborne County*. In the latter case, the teacher, who doubled as the basketball coach, abused a 14-year-old female student who was a scorekeeper for the basketball team. 103 F.3d at 500–01. The teacher fondled her breasts, called her at home, and eventually engaged in sexual intercourse with her. *Id.* at 501. The court held that the student's right to bodily integrity, including her right to be free from the sexual abuse of a teacher, was violated by the teacher's actions. *Id.* at 507.

Perhaps the most relevant sexual abuse case is *Doe v. Warren Consolidated Schools*. In that case, the teacher sexually molested several female students in his class. 93 F. App'x at 814. The court did not specify what actions constituted molestation but noted that the teacher had pleaded no contest to charges of Fourth Degree Criminal Sexual Conduct, a misdemeanor in Michigan. *Id.* That statute can be violated in many ways, one of which is sexual contact between a public-school teacher and student. Mich. Penal Code § 750.520e. "Sexual contact," under that Michigan statute, was defined as:

> [T]he intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner.

Mich. Penal Code § 750.520a. The *Warren Consolidated Schools* court, relying on *Claiborne County*, denied qualified immunity to one of the school administrators responsible for the teacher's placement which, necessarily, meant that the teacher's actions violated the Constitution. *Warren Consol. Schs.*, 93 F. App'x at 821–23.

7

Applying *Warren Consolidated Schools* here, the Court finds that the parents' claims plausibly allege a constitutional violation. The Complaint's allegation that Hopkins engaged in "sexual contact" as defined in Ohio Revised Code § 2907.01(B) is certainly light on details and, absent more, would perhaps constitute the kind of bare legal conclusion that receives no weight under the *Iqbal/Twombly* framework. But here a jury of Hopkins's peers determined that he committed the elements of that crime. Given the jury's factual determination in the related criminal matter, the Court must reasonably infer from the Complaint that Hopkins touched the erogenous zone of school-aged girls for the purpose of sexual gratification. Ohio Rev. Code § 2907.01(B). That makes Hopkins's conduct here virtually indistinguishable from the teacher's conduct in *Warren Consolidated Schools*, both as to level of specificity and the severity of the conduct. Thus, the Court finds that the parents have plausibly alleged that Hopkins violated the constitutional rights of his students.

Hopkins resists this conclusion, arguing that he is entitled to qualified immunity, which means that the parents must "allege with particularity" Hopkins's conduct. (Doc. 57, #378 (citing *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016))). And because the parents do not particularly allege what Hopkins did to his students, Hopkins argues he is entitled to a dismissal of the claims on qualified immunity grounds. (*Id.* at #382).

Two thoughts. First, the Court notes that the Sixth Circuit has held that qualified immunity disputes are "more appropriately dealt with at the summary-judgment stage or at trial," rather than at the motion-to-dismiss stage. *Mills v.*

*Barnard*, 869 F.3d 473, 487 (6th Cir. 2017) (collecting cases); *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015). That is because qualified immunity, an immunity that often turns on the specific facts of each case, is difficult to adjudicate before discovery. *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, C.J., concurring).

But, second, even assuming the doctrine applies at this stage, it does not impose any "heightened pleading requirement." *Courtright*, 839 F.3d at 518 (cleaned up). Plaintiffs need only plausibly allege a violation of a clearly established constitutional right. *Id.* And when determining whether plaintiffs have done so, the Court still must "draw all reasonable inferences in favor of the plaintiff." *Id.*

As illustrated by the discussion of *Doe v. Warren Consolidated Schools* above, the parents have plausibly alleged the violation of a clearly established constitutional right. *Warren Consolidated Schools* clearly establishes that criminal sexual molestation, in the form of touching young students in intimate areas for the purpose of sexual gratification, violates the Constitution. 93 F. App'x at 814. The parents allege that Hopkins engaged in "sexual contact" with the victims, as defined in Ohio Revised Code § 2907.01(B). (Doc. 35, #201). The term is statutorily defined as touching the "erogenous zone" of another for the purpose of sexual gratification. Even if the statute is ambiguous and could cover conduct not as egregious as the conduct in *Doe*, the Court must draw any reasonable inferences in favor of the parents. The Court finds that it is reasonable to infer, especially given that Hopkins is serving an

9

eight-year sentence for criminally touching school-aged girls, that his conduct falls on the clearly established side of the *Warren Consolidated Schools* line.

All in all, the parents have plausibly alleged that Hopkins violated a clearly established constitutional right, so the Court will allow this claim to go forward.

**B.      Civil Assault and Battery**

The next "claim" is actually two claims lumped together. Parents allege that Hopkins committed two Ohio torts—assault and battery—when he touched his students. Civil assault under Ohio law is the "intentional offer or attempt, without authority or consent, to harm or offensively touch another that reasonably places the other in fear of such contact." *Hopkins v. Columbus Bd. of Educ.*, 2008-Ohio-1515, ¶ 29 (10th Dist.) (cleaned up). Civil assault requires intent—that is that the alleged tortfeasor must know "with substantial certainty that his or her act would bring about harmful or offensive contact." *Id.* (cleaned up). Civil battery, on the other hand, involves more than just an offer or attempt to touch another. Battery requires an actual harmful or offensive contact by another who intends to cause that harmful or offensive contact. *Gerber v. Veltri*, 203 F. Supp. 3d 846, 851 (N.D. Ohio 2016).

The parents have plausibly alleged that Hopkins committed both assault and battery. Start with battery. The parents allege that Hopkins violated Ohio Revised Code §–2907.01(B), which means he (1) actually touched his students in an erogenous zone (2) for the purpose of sexual gratification. Touching a school-aged child in an erogenous for the purpose of sexual gratification is highly offensive to a reasonable person. Furthermore, because the parents allege (and a jury has found) that Hopkins

10

touched the students for a particular purpose (sexual gratification), by definition the touching must have been intentional.

Proving battery typically proves assault as well. But to the extent that a creative mind could come up with scenarios where the students were not put in apprehension of contact but were nevertheless offensively touched by Hopkins (say, using the element of surprise), the Court must draw reasonable inferences in favor of the parents. The Court infers that if Hopkins touched several students in erogenous zones he plausibly put those students in reasonable apprehension of that contact—thus plausibly committing civil assault.

Hopkins contends that the parents only offer legal conclusions—that he "assaulted and committed battery against the Child Victim[s]." (Doc. 57, #384). But the Complaint incorporated its prior allegations when pleading the assault and battery claims, including that Hopkins engaged in "sexual contact" with his students under Ohio Revised Code § 2907.01(B). (Doc. 35, #201, 206). And for the reasons above, given the jury verdict in the related criminal matter, that allegation is sufficient to plausibly make out claims for civil assault and battery.

Because the parents have plausibly alleged civil assault and battery claims against Hopkins, the Court will allow those claims to go forward.

## C. Intentional Infliction of Emotional Distress

To allege a claim for intentional infliction of emotional distress, the parents must allege:

> (1) the defendant intended to cause, or knew or should have known that his actions would result in serious emotional distress; (2) the defendant's

11

> conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychological injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure.

*Marconi v. Savage*, 2013-Ohio-3805, ¶ 28 (8th Dist.).

The parents have plausibly alleged that Hopkins intentionally caused emotional distress to his students. First, it is obvious that sexually molesting school-aged girls is beyond any bounds of decency. Society views this conduct as deplorable, which is why it is a crime. Second, any reasonable person should know that sexually molesting children would cause them extreme mental anguish. The Court finds that Hopkins plausibly knew or should have known his actions would have caused emotional distress. Third, the parents allege that their children suffered severe emotional distress as a result of Hopkins's conduct and the Court finds that sexual molestation could plausibly cause such distress.

Hopkins counters that the Complaint fails to allege his intent. (Doc. 57, #386–87). And the parents' response, that they are subject to Ohio's notice-pleading standard rather than Rule 8's plausibility requirement, misapprehends basic civil procedure law. *See Hanna v. Plumer*, 380 U.S. 460, 470–71 (1965) (federal courts apply the Federal Rules of Civil Procedure even in diversity cases). Still, the Court finds that the parents have plausibly alleged intent. Their incorporation of Ohio Revised Code § 2907.01(B), coupled with the jury verdict that Hopkins' conduct falls within that statutory definition, means that they have alleged that Hopkins touched his students' erogenous zones "for the purpose of sexually arousing or gratifying

12

either person." Inherent in the incorporation of this provision is the allegation that Hopkins's conduct was intentional. One cannot do something unintentionally and yet for a purpose at the same time. And because the parents have plausibly alleged that Hopkins touched the students intentionally, the Court reasonably infers that he knew or should have known his conduct would cause severe emotional distress.

Because the parents have plausibly alleged an intentional infliction of emotional distress claim, the Court will allow this claim to go forward.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Hopkins's motion to dismiss (Doc. 57).

**SO ORDERED.**

January 17, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**